UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| JAMIE BYRD and JUSTIN BYRD,                                    ) | |
|                                                                                         ) | |
| Plaintiff,                                                                           ) | |
|                                                                                         ) | |
| vs.                                                                                   ) | **COMPLAINT** |
|                                                                                         ) | ( Jury Trial Demanded) |
| TOOLING ACQUISITION CO.                                        ) | |
| AND NAP TOOLS, LLC,                                             ) | |
| d/b/a NAP GLADU,                                                    ) | |
|                                                                                         ) | |
|             and                                                                    ) | |
|                                                                                         ) | |
| DEARBORN NATIONAL LIFE INSURANCE             ) | |
| COMPANY                                                                   ) | |
| (formerly known as Fort Dearborn Life                       ) | |
| Insurance Company)                                                  ) | |
| Defendants.                                                             ) | |

The Plaintiffs, for their cause of action against the Defendant, do allege and say:

1.    The Plaintiffs both reside in Statesville, North Carolina; and are therefore residents of Iredell County.

2.    The Defendant, Tooling Acquisition Co., is a corporation formed under the laws of Delaware. Tooling Acquisition is currently the owner and operator of Nap Gladu, a service center located on Crawford Road in Statesville, North Carolina.

3.    The Defendant, Nap Tools, LLC, was a limited liability company formed under the laws of Indiana, which transacted business in the state of North Carolina. Nap Tools, LLC conducted business under the name of Nap Gladu, filed in the Iredell County Register of Deeds Book 2021, Page 992. Nap Gladu operated a service center located on Crawford Road in Statesville, North Carolina. On October 8, 2012, Nap Tools, LLC, withdrew as a limited liability company, surrendering their authority to transact business in the state of North Carolina. Their Application for Certification of Withdrawal, filed on October 10, 2012 with the North Carolina Secretary of State, instructs service of process to be in care of Donald C. Metzger.

4.    The Plaintiffs' are brothers, and their father, Andrew Byrd, was an employee of the Defendant at the Statesville service center on Crawford Road in Statesville, North Carolina. Andrew Byrd had a life insurance policy through his employment with Nap Gladu. This life insurance policy was with Fort Dearborn Life Insurance Company.

5.    The Defendant, Dearborn National is a corporation formed under the laws of Illinois, with a principal place of business in Illinois. At all times relevant to this Complaint, Dearborn did business within Iredell County, North Carolina.

6.    Plaintiffs' claims arise under and pursuant to ERISA Section 502, 29 U.S.G § 1132.

7.  This court has jurisdiction over this action pursuant to ERISA Section 502(e)(1), 29 U.S.C. §1:32(e)(1).

8.  Venue is proper in this district pursuant to ERISA Section 502(e)(2), 29 U.S.C § 1132(e)(2), because this is the district where the Plaintiff's plan was administered, where breaches of fiduciary duty took place, where the Plaintiffs' reside, and where the Defendant operates a service center, which employed the Plaintiff's father.

## FACTS

9.  The Plaintiffs fully incorporate paragraphs 1 through 8 above by reference as if fully set forth herein.

10. Plaintiffs' father, Andrew Byrd, was a long-time employee of Defendants Company; he worked for Nap Gladu at the Statesville service center on Crawford Road in Statesville, North Carolina.

11. Andrew Byrd had a Group Term Life and AD&D Insurance Policy through his employment with Defendant Company. The information for this policy is as follows:

    a.  Insurance carrier: Fort Dearborn Life Insurance Company

    b.  Group: NAP Tools, LLC

    c.  Policy Number: F008533-0001

    d.  Policy Holder: NAP Tools, LLC

    e.  Specific Insurance Policies and their Benefit:

        i.   Andrew Byrd had the standard Group Term Life Insurance Policy with a benefit of $50,000.00.

        ii.  Andrew Byrd had a voluntary life insurance policy with a benefit of $70,000.00.

12. At all times relevant to this Complaint the plan was an employee benefit plan within the meaning of ERISA Section §3(3) and 3(2)(a), 29 U.S.C. §1002(3).

13. The Plaintiffs are the joint beneficiaries of both life insurance policies described in paragraph number 10 of this Complaint.

14. Under insurance policies described above in paragraph 10, the Plan Administrator has the power necessary to operate, manage and administer the Plan. Further, the Administrator has full discretionary authority and control over the Plan. The Plan Administrator under this policy was Dearborn National.

15. Under the policy, the plan has other fiduciaries, advisors and service providers. According to the policy, any fiduciary of the Plan may be liable for breach of any responsibility of any plan fiduciary. Nap Tools was a fiduciary of this plan.

16.    This policy is available to all NAP Tools, LLC employees who are full-time, active employees. The policy also allows coverage for employees who become totally disabled and can no longer work full-time.

17.    Pursuant to the policy, Dearborn will continue the life insurance benefit without the further payment of life insurance premium if the employee becomes totally disabled. In order to be eligible to continue remaining insured, the insured must meet the following criteria:

   1)    You are insured under this policy and are actively at work on or after the effective date of this policy; and

   2)    You are under the age of 60; and

   3)    You provide satisfactory written proof of total disability within 12 months after the date you become totally disabled;

   4)    Your total disability has continued without interruption for at least 6 months; and

   5)    You are still totally disabled when you submit proof of disability; and

   6)    All required premiums have been paid

18.    All insurance premiums for the Nap Tools, LLC Group Insurance policy are billed directly to Nap Gladu. Nap Gladu then tenders payment directly to Dearborn. Employees of Nap Gladu are not responsible for directly sending Dearborn premium payments due under this policy, even if the employee is totally disabled.

19.    Nap Gladu maintains exclusive management of employee's policies through an online resource known as the Benefits Manager. Through this online resource, Nap Gladu has sole authority to terminate an employee's coverage. Employees have no access to the online management of their life insurance policies.

20.    On January 9, 2012, Andrew Byrd signed an Annual Election Form to receive voluntary life insurance benefits in the amount of $70,000.00.

21.    In April of 2012, Andrew Byrd became totally disabled. NAP Tools, LLC assisted Mr. Byrd in submitting the necessary paperwork to continue his life insurance coverage for the Dearborn life insurance policies. In a letter from Dearborn to Andrew Byrd, they acknowledged his total disability, and stated that in order to satisfy the provisions of the life insurance policy premiums would need to be paid through November 1, 2012.

22.    On May 25, 2012, Nap Gladu sent a letter to Andrew Byrd addressing his life insurance coverage while on total disability. The letter stated the following:

   (a)    Acknowledges that while totally disabled insurance premiums still had to be paid directly by Nap Gladu to Dearborn;

   (b)    Acknowledges that the total amount due for all of Mr. Byrd's insurance premiums would be $64.08 per week. Out of the $64.08, $13.25 is the premium to be paid for the Group Term Life coverage;

(c)     States that Nap Gladu typically deducts this premium from Mr. Byrd's paycheck every two weeks;

(d)     Requests Mr. Byrd to make a payment to Nap Gladu to reimburse them for payments of these insurance premiums listed above;

(e)     Acknowledges that Mr. Byrd may not be able to pay for all of these insurance premiums in full at once, and requests that he send in checks for a week or several weeks at a time as he could; and

(f)     Apologizes to Mr. Byrd for not getting this information to him sooner.

23.     On June 5, 2012, Andrew Byrd wrote a check to Nap Gladu in the amount of $64.08 for the insurance premiums. Nap Gladu negotiated this check.

24.     On July 17, 2012, Andrew Byrd wrote a check to Nap Gladu in the amount of $64.08 for the insurance premiums. Nap Gladu negotiated this check.

25.     On August 2, 2012, Nap Gladu terminated Mr. Byrd's life insurance coverage through the Benefit Manager resource online. Prior to terminating him and subsequently after terminating him, Nap Gladu did not inform Mr. Byrd of this decision. Nap Gladu also did not tell Mr. Byrd that his payments to Nap Gladu were insufficient. To date, neither Andrew Byrd nor the Plaintiffs have any understanding as to why coverage was terminated by Nap Gladu.

26.     Andrew Byrd died on March 20, 2013 from a Pulmonary Hemorrhage. The Certificate of Death is filed in Book 99, Page 323 of the Iredell County Register of Deeds.

27.     On March 22, 2013, Melodie Brooks with Nap Gladu, sent paperwork to Jamie Byrd regarding the collection of his father's life insurance policy as was described in paragraph number ten of this Complaint. In this letter, Ms. Brooks instructs Jamie Byrd to fill out the paperwork and send the forms back to Nap Gladu, so that Nap Gladu may forward them to Dearborn.

28.     On April 3, 2013, Dearborn sent a letter to Jamie Byrd acknowledging receipt of the life insurance claim.

29.     On May 2, 2013, Dearborn sent a letter to Jamie Byrd, and informed him that they have requested proof of the premium being paid during the disability period, April 1, 2012 through November 1, 2012.

30.     On May 10, 2013, Paula Beck, an Agent with ABA Insurance Services, sent a fax to Dearborn. This fax stated the following

(a)     Attached is proof of premium payments for the months of April 2012 through August of 2012;

(b)     Acknowledgment that this is just short of the 6 month waiting period for Waiver of Premium, as is required under the insurance policy;

(c)     Acknowledgment that Nap Gladu did not understand "they could leave a disabled employee on the plan 'until the end of the 12 month in which the disability began;'"

(d)      Acknowledges that Nap Gladu would like to pay the additional premium "they would have paid had they understood they were allowed to keep him on the plan longer due to his disability;"

(e)      Acknowledges that Nap Gladu "made a good-faith effort to administer the plan correctly, but simply misunderstood the process for terminating an employee who wasn't 'Actively at Work,' due to a disability;" and

(f)      Acknowledges that Nap Gladu made a "simple administrative error."

31.      On June 3, 2013, Dearborn Insurance Company denied Plaintiffs claim as beneficiaries under the life insurance policy, due to the failure to pay the premium for the month of September 2012.

32.      Pursuant to an investigation conducted by Dearborn, the Plaintiffs claim as beneficiaries under the life insurance policy would have been granted had it not been for the one month of unpaid insurance premium.

### FIRST CLAIM OF RELIEF
### BREACH OF FIDUCIARY DUTY
*Tooling Acquisition Co., et al.*

33.      The Plaintiffs fully incorporate paragraphs 1 through 32 above by reference as if fully set forth herein.

34.      At all relevant times, as alleged above, the Defendants were fiduciaries within the meaning of ERISA §3(21)(a), 29 U.S.C§ 1002(21)(A)(i) and (iii) in that they:

     (a) Exercised discretionary authority or discretionary control respecting management of such plan; and

     (b) They have discretionary authority or discretionary responsibility in the administration of such plan.

35.      Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of plans' assets are responsible for ensuring that required terms of the policy are prudently followed so as to maintain the policy, and keep the policy in good standing.

36.      A fiduciary of a plan under ERISA would breach this duty by failing to comply with the terms of the policy, and allowing the policy to lapse. The fiduciary here did not act with the care, skill, prudence and diligence required by law because the Defendant failed to make the final premium payment and as a result Dearborn canceled the insurance policy.

37.      As a direct and proximate result of the breach of fiduciary duty alleged herein, the Plaintiffs were unable to collect as beneficiaries under the life insurance policy.

38.      Pursuant to ERISA § 502(a), 29 U.S.C §1132(a) and § 409, 29 U.S.C § 1109(a), Defendants are liable to restore the losses to the plan caused by their breach of fiduciary duties alleged herein.

**SECOND CLAIM OF RELIEF**
**EQUITABLE RELIEF**
*Tooling Acquisition Co., et al.*

39.    The Plaintiffs fully incorporate paragraphs 1 through 38 above by reference as if fully set forth herein.

40.    Under ERSIA 29 U.S.C §1132 (a)(3), a beneficiary may obtain appropriate relief.

41.    Plaintiffs are entitled to an equitable award from this Court based off of the reasons enumerated in this complaint under the First Claim for Relief—Breach of Fiduciary Duty.

42.    The Plaintiffs have been injured as a direct and proximate result of the Defendants failure to make the last premium payment to Dearborn.

43.    The Defendants' beach of their fiduciary duty caused Dearborn to cancel the life insurance policy; thus preventing the Plaintiffs from claiming the benefit do to them under the life insurance policy.

**THIRD CLAIM OF RELIEF**
**BREACH OF FIDUCIARY DUTY**
*Dearborn National*

44.    The Plaintiffs fully incorporate paragraphs 1 through 43 above by reference as if fully set forth herein.

45.    At all relevant times, as alleged above, the Defendants were fiduciaries within the meaning of ERISA §3(21)(a), 29 U.S.C§ 1002(21)(A)(i) and (iii) in that they:

    (a) Exercised discretionary authority or discretionary control respecting management of such plan;

    (b) Have discretionary authority or discretionary responsibility in the administration of such plan; and

    (c) Have been named as the Plan Administrator of such plan.

46.    Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of plans' assets are responsible for ensuring that required terms of the policy are prudently followed so as to maintain the policy, and keep the policy in good standing.

47.    A fiduciary of a plan under ERISA would breach this duty by failing to comply with the terms of the policy, and allowing the policy to lapse. The fiduciary here did not act with the care, skill, prudence and diligence required by law because the Defendant failed to provide the proper oversight to the life insurance policies maintained by Nap.

48.    As a direct and proximate result of the breach of fiduciary duty alleged herein, the Plaintiffs were unable to collect as beneficiaries under the life insurance policy.

49.    Pursuant to ERISA § 502(a), 29 U.S.C §1132(a) and § 409, 29 U.S.C § 1109(a), Defendants are liable to restore the losses to the plan caused by their breach of fiduciary duties alleged herein.

## FOURTH CLAIM OF RELIEF
## EQUITABLE RELIEF
### *Dearborn National*

50.     The Plaintiffs fully incorporate paragraphs 1 through 49 above by reference as if fully set forth herein.

51.     Under ERSIA 29 U.S.C §1132 (a)(3), a beneficiary may obtain appropriate relief.

52.     Plaintiffs are entitled to an equitable award from this Court based off of the reasons enumerated in this complaint under the Third Claim for Relief—Breach of Fiduciary Duty.

53.     The Plaintiffs have been injured as a direct and proximate result of the Defendants failure to provide the proper oversight to the administration of Plaintiff's life insurance policy.

54.     The Defendants' beach of their fiduciary duty allowed for Plaintiff's life insurance policy to be terminated; thus preventing the Plaintiffs from claiming the benefit do to them under the life insurance policy.

WHEREFORE the Plaintiffs pray for:

1. The benefits due to them under the plan;

2. The cost of this action pursuant to 29 U.S.C §1132(g);

3. Attorneys' fees pursuant to 29 U.S.C §1132(g);

4. That these issues be tried by a jury; and

5. Such other and further relief as the Court may deem just and proper.

This the _____ day of January, 2015.

> HOMESLEY, GAINES,
> DUDLEY & CLODFELTER, LLP
> Attorneys for the Plaintiff
>
> Edmund L. Gaines
> N.C. Bar No.: 1573
> Leah Gaines Messick
> N.C. Bar No.: 45481
> 316 E. Broad Street
> Statesville, NC 28677
> Telephone: (704) 873-2172
> Facsimile: (704) 924-2103